B-W ACCEPTANCE CORPORATION, appellant, v. GEORGE J. SALURI et ux., appellee cross-appellants, and IOWA ZONE DISTRIBUTING COMPANY, INC., et al., appellees.

No. 51846.

(Reported in 139 N.W.2d 399)

490

January 11, 1966.

Abramson, Myers & Myers, of Des Moines, for appellants.

Henry Wormley and Anthony Critelli, both of Des Moines, for appellee cross-appellants.

I. Joel Pasternak and Daniel E. Hannan, both of Des Moines, for appellees.

BECKER, J.—The corporate background of plaintiff should be outlined. Borg-Warner Corporation manufactures coin operated laundry and dry cleaning machines. The manufacturer sells its product through its subsidiary, Norge Sales Corporation, and provides financing through its subsidiary B-W Acceptance Corporation, both separately incorporated. None of the three corporations have been incorporated in Iowa, nor are any of them authorized to do business in Iowa. B-W Acceptance Corporation, the finance company and holder of the chattel mortgages, is plaintiff herein.

Defendant Iowa Zone Distributing Company, Incorporated, is an Iowa corporation organized to distribute products manufactured by Borg-Warner pursuant to agreement with Norge Sales. Defendants C. R. Jeffries and S. W. Jeffries are stockholders of Iowa Zone and individually guaranteed various contracts entered into by Iowa Zone.

Defendants George J. Saluri and Dorothy V. Saluri, husband and wife, residents of Des Moines, Iowa, had long been in the dry cleaning business when, on May 21, 1961, they purchased coin operated Norge (Borg-Warner) dry cleaning machines from Iowa Zone. The conditional sales contract signed in connection with the purchase provided for a total obligation of $40,113.88. On December 4, 1961, the couple purchased an additional group of dry cleaning machines under a conditional sales contract calling for payment of the sum of $21,163.83. The foregoing conditional sales contracts were assigned by Iowa Zone to B-W Acceptance Corporation. Both conditional sales contracts were guaranteed by Iowa Zone, and by C. R. Jeffries and S. W. Jeff-

ries personally. It is on these contracts that plaintiff brings its action.

Defendants Saluri answered and filed a counterclaim. Defendants Iowa Zone, C. R. Jeffries and S. W. Jeffries answered and filed a cross-petition. Defendants Henry Fingert, Sam Fingert and C. L. Lockridge and Dorothy M. Lockridge, joined as junior lienholders, all failed to appear. Default was taken against them. Polk County answered but no evidence or judgment respecting its position appears of record.

In Count I plaintiff seeks judgment for $34,082.32 on the May conditional sales contract. In Count II plaintiff seeks judgment in the sum of $21,163.83, together with interest on the December contract. The trial court in its extended opinion gave careful consideration to the matters of accounting, and determined that on said counts the plaintiff was entitled to judgments as of September 25, 1964, in a sum of $32,582.32, on Count I, and $21,163.83, on Count II. These amounts were reduced as hereinafter indicated.

Cross-petitioner Iowa Zone alleged that its contract with plaintiff provided among other matters that there would be withheld by plaintiff finance company an amount equal to five percent of face value of the paper financed, less finance charges, on each sale made by Iowa Zone. This fund would be a reserve to the credit of the dealer. The money was to be paid to dealer when the obligation evidenced and secured by the paper was paid in full, provided no other paper was then in default. Iowa Zone claimed that it had $26,213.96 to its credit under this arrangement.

Cross-petitioner also sought credit for $16,035 alleged to have been withheld by plaintiff in addition to the five percent. Both items were allowed to cross-petitioner, constituting a $42,249.46 reduction in plaintiff's claim. Interest on the latter item was also allowed further reducing the balance due to $10,193.84, against the defendants George J. Saluri and Dorothy V. Saluri, Iowa Zone Distributing Company, Incorporated, C. R. Jeffries and S. W. Jeffries, and each of them. Neither party now argues nor urges reversal on the basis of the detail of the court's accounting methods.

494

The final decree provided for foreclosure of the mortgages and special execution. It also provided for general executions at plaintiff's request if the special executions were insufficient. The counterclaim of defendants Saluri was dismissed. Plaintiff appeals and George J. Saluri and Dorothy V. Saluri cross-appeal.

I. Plaintiff first assigns error on the ground that where there are multiple defendants a counterclaim cannot be asserted unless it is common to all defendants. "If there be but one defendant, he may file a counterclaim; if there be more than one defendant, then the counterclaim filed must belong to all of the defendants." Shaw v. Ioerger, 203 Iowa 1256, 1260, 212 N.W. 719; Jordison v. Jordison, 215 Iowa 938, 247 N.W. 491.

■ The trial court noted that all of the cases limiting the counterclaim in such manner were decided before adoption of rule 30 of the Iowa Rules of Civil Procedure. "Unless prohibited by rule or statute, a party may counterclaim against an opposing party on any cause of action held by him when the action was originally commenced, and matured when pleaded." The court ruled that any defendant may assert a counterclaim regardless of whether his codefendants have an interest in it, unless prohibited by other rule or statute.

We have not passed on this point since the adoption of rule 30, but now determine the foregoing interpretation by the trial court correctly states the law in relation to counterclaims in cases where there are multiple defendants.

■ II. Plaintiff's second error is the claim that the $26,-213.96 setoff representing the five percent reserve account of defendant Iowa Zone was improperly allowed because that claim had not, at time of trial, matured. This proposition requires recognition that plaintiff B-W and defendant Iowa Zone transacted large amounts of business involving purchases other than those made by defendants Saluri.

The record is that plaintiff is still the holder of conditional sales contracts assigned to it by defendant Iowa Zone which are substantially in default at the time of trial. These delinquent contracts represent total obligations in excess of $117,000, on various transactions concerning various vendees. The court felt that the $26,213.96 reserve could and should be applied to the

accounts represented in this action upon application by Iowa Zone.

The contract between the parties provides that Iowa Zone shall receive the funds when the obligations evidenced and secured by the papers have been paid in full, provided no other paper purchased is then in default. The clear purpose of this provision in relation to the five percent withholding is to provide a reserve account available to the plaintiff-company protecting it in relation to all of the outstanding obligations until all are current. To become entitled to its reserve the dealer need not wait until all accounts are paid, but it must show that none is in default. Nothing in the contract provides that the plaintiff finance company is obligated to apply any portion of reserve to any given account.

"It is the court's duty to give effect to the language of the contract in accordance with its plain and ordinary meaning and not make a new contract for the parties by arbitrary judicial construction." Bruhl v. Thul, 257 Iowa 889, 892, 134 N.W.2d 571, 573. It will be noted that rule 30 of the Iowa Rules of Civil Procedure heretofore set forth ends with the phrase "and matured when pleaded."

"To allow a debt not due to be set off against one already due would be to change the contract and advance the time of payment." 20 Am. Jur.2d, Counterclaim, Recoupment, Etc., section 57, page 275. See also Mattek v. Hoffmann, 272 Wis. 503, 76 N.W.2d 300, 57 A. L. R.2d 696, where in a somewhat analogous situation the Wisconsin Supreme Court held that a valid claim, not yet matured, could not be set off against a claim which is presently due and owing.

The defendants' brief and argument uses the term equitable setoff. "Generally, the law of setoff as applicable to demands not due is the same in equity as at law. A debt due at a future time cannot be set off in equity against a debt presently due, and equity has no power to prevent a party from collecting at law a debt due him because he owes the defendant a debt not due, which the defendant may not be able to collect when it is due, if this fund is not stayed in his hands. * * *.

"Equitable setoffs of unmatured obligations may be allowed

under special circumstances, such as insolvency of the obligor, or probable difficulty in collecting the obligation at maturity, but such setoffs are largely within the court's discretion. Nonresidence of the plaintiff may constitute good ground for equitable setoff where the defendant's claim arose after commencement of the action." 20 Am. Jur.2d, Counterclaim, Recoupment, Etc., section 59, page 277.

■ While this phase of the contract is wholly in favor of plaintiff B-W, it is not illegal. "'Likewise, the court may not alter a contract for the benefit of one party and to the detriment of the other or others, or make a new contract at the instance of one of the parties, or, by a process of interpretation, relieve one of the parties from the terms to which he voluntarily consented, or, because of equitable considerations, obviate objections which might have been foreseen and guarded against, * * *.' " Smith v. Stowell, 256 Iowa 165, 172, 125 N.W.2d 795, 799, quoting with approval 17A C. J. S., Contracts, section 296(3), pages 89–98 (1963).

Reduction of plaintiff's judgment by the $26,213.96 value of the five percent reserve was therefore improper.

■ III. There was added to the reserve account by plaintiff B-W the sum of $16,035.50 made up of sums which plaintiff from time to time withheld from items of profit due Iowa Zone. These latter withholdings were not authorized by any contractual provision. They were withheld by plaintiff because of the large potential loss that seemed to be looming at the time in connection with defendant Iowa Zone.

The allowance of this sum on the cross-petition was proper.

■ IV. Plaintiff's final assignment of error that defendants Saluri cannot take advantage of the cross-petition funds credited to Iowa Zone is without merit.

At trial this position was urged upon the court on the basis that such action would constitute an unjust enrichment. The $16,035.50 was Iowa Zone's money. It could be applied to any account Iowa Zone requested.

Plaintiff in this case elected to join Iowa Zone with defendants Saluri and the Jeffries seeking one judgment on which all four individuals and a corporation would be equally liable. It

cannot now complain that the money that it holds for one of the defendants is, at the request of that defendant, credited to the judgment it seeks.

██ For the first time on this appeal, plaintiff urges on behalf of this assignment that the defendants Saluri have barred and estopped themselves from taking advantage of the funds due and owing defendant Iowa Zone. This proposition was not pleaded nor was it argued to the court on trial. Plaintiff cannot now assert it for the first time in this appeal. Though an equity case is tried de novo in this court, the appellant cannot try it here on a new theory that was not advanced in the trial court. Stolar v. Turner, 237 Iowa 593, 600, 21 N.W.2d 544; New Amsterdam Cas. Co. v. Bookhart, 212 Iowa 994, 1001, 235 N.W. 74, 76 A. L. R. 897.

V. Defendants Saluri cross-appeal on the ground that the court erred in failing to allow damages on their counterclaim. This counterclaim is quite complicated with references to the parties to the alleged contracts and arrangements for installation of the coin operated cleaning machines in question. However, plaintiff B-W is alleged to be responsible for faulty installation of equipment, failure to maintain adequate parts supplied for machines purchased and other claimed contractual breaches. Plaintiff answered this counterclaim by affirmatively pleading contractual estoppel and by pleading that it is a holder in due course, as well as by general denial.

At trial the court did not pass on the myriad complicated issues thus raised. It decided that failure to prove the damages claimed was fatal to defendants Saluris' counterclaim. After careful perusal of the record we agree.

██ In order to be entitled to an award of damages, the claiming party has the burden of proving the value of the damages as to each item with some reasonable measure of certainty. "The rule that uncertainty as to the amount of the damage will not prevent a recovery does not mean that there need be no proof of the amount of the damage. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in

some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances." 22 Am. Jur.2d, Damages, section 25, page 46.

We will briefly note some of the areas of claimed damage and the testimony in relation thereto.

■■■ Defendants Saluri proved with reasonable certainty that the first installation of cleaning machines was wrongfully made without a dike to contain cleaning fluid when it leaked, and to recapture it. There is sufficient evidence to indicate that this was the duty of the installer. However, in relation to the cost of installation of this dike Mr. Saluri's testimony was that such cost would be about $10,500, but he acknowledged that he had not taken or obtained any bids for installing a dike. Plaintiff's evidence in this regard was that the dike could be installed for $125. Neither party substantiated their opinions with any competent evidence. The burden was on counterclaimants.

It was established that there was a loss of cleaning fluid known as perchlorethylene. The record is completely silent as to amount of fluid lost or its fair market value.

Mr. Saluri testified that the boilers and flues were corroded and would have to be replaced, due to the damage caused by the leaking fluid and fumes therefrom. Other than opinion evidence by Mr. Saluri as to replacement cost of these items, the record is silent as to damage in this respect. There is no evidence of value before and after the claimed wrong.

There was testimony that customers' clothing was destroyed or damaged by the leaking cleaning fluid. Again there was no testimony to actually substantiate Mr. Saluri's estimate that between $800 and $900 worth of garments were replaced. The number of claims honored was not mentioned. If records of payments in this regard were kept, they were never produced.

The evidence was equally insufficient in relation to the personal damage suffered by defendants due to inhaling the fumes. There was no evidence that the discomfort involved was anything but temporary. With respect to the loss of profits due to failure to have parts available and to breakdowns caused by loss of

cleaning fluid, there was again little more than speculation by Mr. Saluri to help the court. It will unduly extend this opinion to analyze the paucity of damage evidence further.

The cross-appeal makes a factual argument based on the record made. It does not cite a single authority for allowing damages on such evidence. These were not matters that were by their nature not susceptible to proof. Cost of installation of equipment, cost of replacement of lost fluid, cost of replacement of garments to customers, amount of damages to other equipment, loss of profits, are all susceptible of, and deserving of, proof with reasonable particularity. This was not done, nor was any reason why it could not be done offered.

Under this state of the record the trial court found it unnecessary to pass upon the various issues concerning liability for the reason that no damages have been proven. We have carefully considered this record, we fully agree that any damage found by the court to be due the Saluris by virtue of their allegations in the counterclaim would necessarily have to be based on speculation and surmise.

 VI. "Our review in this equity action is de novo. Rule 334, Rules of Civil Procedure. The scope of review is the entire action. Cuthbertson v. Harry C. Harter Post No. 839 of V. F. W., 245 Iowa 922, 927, 65 N.W.2d 83, 87. Defendant may properly sustain the decree by pleaded propositions not reflected in the trial court's findings and conclusions, Brandt v. Schucha, 250 Iowa 679, 682, 96 N.W.2d 179, 181." Uptown Food Store, Inc. v. Ginsberg, 255 Iowa 462, 465, 123 N.W.2d 59, 61, 1 A. L. R.3d 765.

 We are cognizant that there are additional questions inherent in the trial court's ruling. We have dealt with all questions raised by the parties on appeal. "It is well settled that errors or propositions not assigned will not be considered on appeal. We have often so held. * * * The same rule applies to 'propositions' in equity cases as to 'errors' in law actions." Randolph Foods, Inc. v. McLaughlin, 253 Iowa 1258, 1279, 115 N.W. 2d 868, 880.

By reason of our conclusions in Division II of this opinion the decree of the trial court must be modified by subtracting

$26,213.96 from defendants Iowa Zone's cross-petition award, and by adding a like amount to plaintiff's final judgment.

This case is therefore remanded as to plaintiff-appellant's appeal with instructions to correct the decree accordingly, and is affirmed in all other respects. As to defendants-cross-appellants' appeal, Affirmed.

All JUSTICES concur.