ARTHUR L. JERSILD et al., appellees, v. JAMES V. SARCONE, zoning administrator, Polk County, et al., appellants.

No. 52143.

(Reported in 149 N.W.2d 179)

MARCH 7, 1967.

Chris Becker, Assistant County Attorney, of Des Moines, for appellant James V. Sarcone.

McWilliams & Gross, of Des Moines, for appellant Eugene R. Severs.

Stewart, Miller, Wimer, Brennan & Joyce, of Des Moines, for appellees.

LARSON, J.—This appeal involves the legality of a building permit issued by the Polk County zoning administrator to defendant Eugene R. Severs, d/b/a MacMillan Oil Company, hereinafter referred to as Severs, to erect five storage tanks upon an

unplatted narrow strip of land leased from the Inter-Urban Railway Company in a light industrial district (M-1) zone.

When the board of adjustment, hereinafter called the board, sustained the administrator's action, plaintiffs brought certiorari in the district court under the provisions of chapter 358A, Code of Iowa 1962, contending as a matter of law that the application and issuance of Certificate No. 2334 do not comply with the requirements of the county zoning ordinance. Some of the plaintiffs are owners of property across the street to the south in a multi-family residence district (R-3) zone. Pursuant to the trial court's order annulling the permit, defendant Severs and the county zoning administrator appeal.

Appellees rely principally upon two grounds to sustain the court's judgment. Both relate to the setback requirements of the Polk County zoning ordinance, appellants' "Exhibit 2" herein.

Appellants contend those requirements were met, that as a matter of law the court misconstrued the provisions of the ordinance in holding they require a corner lot owner to consider the frontage on either of two abutting streets the principal frontage, that the district boundary line was the north line of Hancock Avenue, and that the required side yard setback was not shown.

It appears Severs owns and operates an oil business on a tract of land extending eastward from Second Avenue along the Inter-Urban railroad tracks in the NW ¼ of Section 23-79-24, West of the 5th P.M., in Polk County, Iowa, that he leased from the railroad a strip of adjacent land eastward over 300 feet long and 34 feet wide, described as follows: The North 25 feet of the NW ¼ of the SW ¼ of the NW ¼ and the South 25 feet of the SW ¼ of the NW ¼ of the NW ¼ of Section 23, Township 79, Range 24, West of the 5th P.M.; that Hancock Avenue, a county road 30 feet wide, runs east and west along the south side of this tract and dead-ends near the west end of the leased land. Some 300 feet east of the dead-end Hancock intersects Oxford Street, a north and south street. Oxford Street apparently extends north of this intersection abutting the east end of the leased tract and then turns eastward along the spur track servicing the Mac-Millan Oil Company. For visual aid in comprehending this situation, we set forth a rough sketch of the area.

Zone M-1, Article 14, requires a front yard depth of 50 feet, a rear yard depth of 40 feet and, unless the area is adjacent

to a residence or "R" zone, no side lot setback. Severs' application, "Exhibit A", filed June 18, 1964, showed a setback from Oxford Street to the first of five storage tanks to be erected of more than 50 feet, a rear yard of over 40 feet, and a side yard setback of about 31 feet from the center of Hancock Avenue. It also showed a three-foot strip extending about 200 feet east and west, north of Hancock, owned by one of the plaintiffs, Miss Mc-Sweyn, which he claimed would prevent his tract from abutting the R-3 zone to the south. Since the exact location of this strip was not established, this claim apparently was not considered.

After the permit was issued, plaintiffs appealed to the board of adjustment as provided in section 358A.13 of the Code. Hearing was had before that body and it sustained the administrator's action, finding the front of the tract was on Oxford Street, that his front yard setback was sufficient, and that the side setback adjacent to an R-3 zone was properly determined from the center line of Hancock Avenue. Plaintiffs appealed by petition under the provisions of Code section 358A.18, and the court allowed a writ of certiorari to the board for review of its action under the provisions of section 358A.19. No stay was ordered. Pursuant to trial under section 358A.21, judgment adverse to plaintiffs was rendered, but on a motion to reconsider, the court annulled the permit and we have this appeal. Although the district court review is de novo, ours is on assigned errors. Deardorf v. Board of Adjustment, 254 Iowa 380, 384, 118 N.W. 2d 78.

I. The county zoning law, chapter 358A, Code of 1962, empowers counties, at the option of the board of supervisors, to adopt comprehensive zoning ordinances. The constitutionality of such statutes and ordinances enacted thereunder, like those in cities and towns, has been generally sustained, as a valid exercise of the police power, in the interest of public peace, order, morals, health, safety, convenience and the general welfare. Upon this point there is no dispute, but in support of the proposition see Boardman v. Davis, 231 Iowa 1227, 1229, 3 N.W.2d 608, and citations; Deardorf v. Board of Adjustment, supra; Anderson v. Jester, 206 Iowa 452, 221 N.W. 354; McQuillin,

Municipal Corporations (1965 Revised Edition), Volume 8, Zoning, section 25.76.

' ▮▮ In Boardman (page 1231) we pointed out that "a zoning ordinance, which rests upon the police power of the state, may, and often does, lay an uncompensated burden upon some property owners. However, such requirements do not constitute an easement upon the property. Nor do they deprive the owner of his property, as in the case of an appropriation by eminent domain for some specific public use. They are merely a restraint upon the owner's use of the property for the protection of the general well-being, or, in other words, to prevent harm to the public. In determining the validity of the police regulation the prime consideration must be the general purpose and relationship of the ordinance and not the hardship of an individual case." So, it is concluded setback provisions of an ordinance will not be held invalid unless they clearly appear to be arbitrary and unreasonable. Courts should, however, take care to construe them so that they will not be arbitrary or unreasonable, and if possible avoid an interpretation that would make them confiscatory. See Anderson v. Jester and Boardman v. Davis, both supra; and Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210.

▮ Although a zoning ordinance establishing building or setback lines is presumed to be valid and the burden to prove the line unreasonable is on the one asserting it, it is generally held that "a zoning ordinance providing for building or setback lines must be reasonable, clear and unambiguous, uniform in operation and not unfairly discriminatory." McQuillin, Municipal Corporations (1965 Revised Edition), Volume 8, section 25.138, and authorities cited. It is undoubtedly true, as appellants herein contend, that the burden rests upon plaintiffs in certiorari to show the illegality of the zoning administrator and the board of adjustment's order granting the permit herein. Section 358A.21; Deardorf v. Board of Adjustment, supra, and citations. It is also true that when there is a serious question as to the reasonableness of the taking under police power, the ordinance will be construed so as to avoid virtual confiscation and unconstitutionality.

■ In McQuillin it is stated at page 443 of Volume 8, supra: "Virtual confiscation occurs when the application of set-back provisions to a lot reduces the usable surface to an absurdly small size", with citations. State ex rel. Bollenbeck v. Village of Shorewood Hills, 237 Wis. 501, 297 N.W. 568.

II. Although there is a contention by appellants that there was insufficient evidence to support the trial court's finding of fact herein, there is really little or no dispute as to the basic facts upon which this decision must rest. The real issue is not whether the board action was arbitrary and capricious, but whether under the material facts its decision was legally correct. Actually it is the interpretation of the county zoning ordinance that was before the court, and evidence was taken which counsel thought would aid and enlighten the court as to its meaning. This is not a controversy involving the board's power to hear and pass on requests for exceptions and variances. Section 358A.15, paragraphs 2 and 3. Here there is no dispute as to the measurements, location of the property and the streets involved.

■ The construction of the ordinance before us, under the undisputed facts, is a question of law. Deardorf v. Board of Adjustment, supra. The application for a zoning certificate by Severs, in due form, asked a permit to erect five round storage tanks above ground for the storage of noninflammable products. The attached plat showed the first tank setback from Oxford Street, a distance of 78 feet, a setback of 29-plus feet from the center line of Hancock Street, and a 94-foot rear yard. Based upon this application, which showed the necessary front setback on Oxford Street and a street side yard setback of 29.3 feet from the center of Hancock Avenue, a permit was issued. Thus, our first question is whether the administrator and the board of adjustment on appeal were correct in concluding the tract abutment on Oxford Street selected by Severs as his front yard was permissible under the ordinance. The trial court thought it was not, but on this point we must disagree.

The trial court held that the ordinance requires Hancock Avenue be considered the front of this long narrow tract and based its conclusion apparently on the definition of "frontage"

found in Article 4, page 3, which states, "All the property on one side of a street between two (2) intersecting streets (crossing or terminating) measured along the line of the street, or if the street is dead-ended, then all of the property abutting on one side between an intersecting street and the dead-end of the street." Thus it reasoned all Severs' tract on Hancock must be considered the front. We do not so read this provision. True, the tract has a frontage on Hancock, but from a reading of other provisions and definitions in this ordinance we are convinced this definition is not intended to be restrictive. Where lots or tracts abut on a street, we have frontage, and of course as to corner lots there is a frontage on two streets. In this regard we note another definition on page 8 of the ordinance which states, "On corner lots, the rear yard shall be considered as parallel to the street upon which the lot has its least dimension," and on page 5 a corner lot is defined as "A lot abutting upon two (2) or more streets at their intersection." A lot is defined as "A parcel of land occupied or intended for occupancy by one main building together with its accessory buildings, including all open spaces required by this ordinance, and having its *principal frontage* upon a public street or road." (Emphasis supplied.)

We find from these definitions and the plats shown on page 6 of the ordinance that there is no attempt in this ordinance to prescribe which street a corner property owner must use as his principal frontage or must face with his front yard. Although an ordinance may require the maximum setback from each of the two abutting streets, and this one does by providing, "corner lots platted after the effective date of this ordinance, the front yard setback shall apply to both street sides of the lot" (Article 6, General Regulations, page 13), Severs' tract has not been platted.

Severs' tract must be considered a corner lot abutting on both Hancock and Oxford Streets. It was proper for him to choose which frontage he desired to use as his front yard, and he chose Oxford. His setback from Oxford was more than 50 feet, and we are satisfied he has met the front yard require-

ment and the 40-foot rear yard requirement set out in Article 14, page 36, of the zoning ordinance.

We have searched through many textbooks, encyclopedias and cases in an effort to find authority in a zoning body to restrict the choice of a corner-lot-property owner as to which of two abutting streets he must use to face his structure or designate which yard is his front yard. We have found none and counsel have cited none. In any event, the rule of strict construction of restrictions on the free use of property is applicable where the wording of the restriction is ambiguous. Maher v. Park Homes, Inc., 258 Iowa 1291, 142 N.W.2d 430, 434. As bearing on this matter, see McQuillin, Municipal Corporations, Volume 8, section 25.138, page 439, and citations; Yokley Zoning Law and Practice, Second Ed., Volume 1, sections 145 and 146, and citations, and Third Ed., Volume 2, section 13-9, page 96; 58 Am. Jur., Zoning, section 51, page 973; State ex rel. Bollenbeck v. Village of Shorewood Hills, supra, 237 Wis. 501, 297 N.W. 568.

III. The trial court held "Certificate No. 2334 does not provide for the proper side yard * * * setbacks as defined in Article 14, Polk County Zoning Ordinance" and "as a matter of law" the application and Certificate No. 2334 do not comply with the requirements of the ordinance.

Two important questions arise when we consider the side yard setback requirements under the facts revealed. Both relate to the point from where the measurement starts to the structure placed upon the involved tract. While there was some testimony regarding the location of the south boundary of the M-1 zone and the north boundary of the R-3 zone, we find it neither revealing nor helpful in deciding the question as to the location of the district separation line.

Appellants contend, as a matter of law and proper ordinance construction, that the line separating districts M-1 and R-3 was the center of Hancock Avenue. It is not disputed that neither the ordinance nor the zoning map discloses the exact locality of this line. Mr. Anderson, who helped prepare the ordinance, testified he thought the north line of Hancock was the south boundary of District M-1 and the south line of Han-

cock was the north line of the R-3 district. He thought Hancock was not zoned, but also said that on plats they often deleted the line when it went up the center of the street so as not to blur the name of the street.

The administrator and the board considered Hancock was a county road and concluded, since the line was not clear where the districts joined, it should be found to be the center line of Hancock Avenue.

On page 10 of this ordinance under Article 5, entitled "Districts, Boundaries Thereof, and Interpretation of Boundaries", we find the following: "1. Boundaries indicated as approximately following the center lines of streets, highways, or alleys, shall be construed to follow such center lines." There was no apparent reason why Hancock Avenue should not be zoned and it is reasonable to believe the intent here was to make M-1 and R-3 districts abut. There is no evidence to support a contrary finding. Although not decisive in this appeal, we are satisfied under the record that the board did not err in determining the boundary line between districts M-1 and R-3 was the center line of Hancock Avenue.

IV. Yard requirements for M-1 districts set forth on page 36 of the ordinance are, front yard, "Fifty (50) feet"; side yard, "None required except adjacent to an 'R' District, in which case not less than twenty-five (25) feet"; rear yard, "40 feet." Having determined Severs has shown compliance with the front and rear setbacks and the locality of the boundary line separating the districts, we are faced with the most troublesome of the problems, that of determining the meaning of the side yard exception. The trial court did not discuss the problem, but merely held the setback requirement was not met. If the minimum 25-foot setback is to be measured from the center line of Hancock, the application was proper and the certificate valid. On the other hand, if the measurement must be taken from the street line which is but 14 feet from the structures, then the application was defective and the certificate was properly declared null and void.

Appellants argue the lot line of Severs' tract is in the center of Hancock, that since it is a county road and does not

appear to be a dedicated or deeded strip of land, the property owners on each side own to the middle of the road and, in case of abandonment, each could take possession of his one half. Thus, they maintain their property line, as contemplated by the side yard setback for an M-1 district, is the center of the road.

If it were not for the 25-foot exception, clearly the owner of this railroad tract could build right up to the property line, for there would be no side lot setback needed. Of course, in view of the road easement, he could not build beyond the street line. Lot lines are defined in the ordinance as "The lines bounding a lot"; a street or road line as "A dividing line between a lot, tract or parcel of land and a contiguous street or road"; and a "Street or Road, Public" is defined as "Any thoroughfare or public way which has been dedicated to the public or deeded to the County for street or road purposes."

Although it would seem this side lot provision was meant to apply to places other than streets or roads where an M-1 and an R-3 district meet, it is quite clear from reading all the setback provisions in this ordinance that the yard or setback area, when abutting a street or road, is to the dividing line between the lot and right-of-way or the street lot line, not from the middle of the street, even though not deeded or dedicated to the public.

Relative to residential districts we find a specific provision as to corner lots which states: "Corner lots—the width of the side yard adjacent to the side street may be reduced to not less than ten (10) feet." While there might be good and sufficient reasons to require a street side setback of 25 feet in an M-1 district, the reason escapes us why an ordinance would permit a side yard of only 25 feet on an interior lot district separation and require a setback of 25 feet plus half the width of an un-dedicated street when the side yard is next to a street. Nevertheless, we think the ordinance clearly requires the side yard measurement from the street line to the structure and, since there were only 14 feet shown as to this distance, the application should not have been granted. Side yards, as used in the setback requirements, do not seem to contemplate a part of a street in actual use, and there is nothing in the ordinance that

we can find which would indicate the side yard provision in an M-1 district was to be measured differently from those in other districts. In other words, we cannot rewrite the provision to read, "None required except adjacent to an 'R' district, in which case not less than twenty-five (25) feet" *from the district line.*

V. Appellees' contention that Severs' application was defective in that it failed to show provisions for off-street parking and loading has no merit. It is evident by looking on the plat such area is adequate.

VI. Considerable argument appears as to the power and authority of the board of adjustment and a number of cases cited tending to uphold its decision in zoning appeals. However, most of these cases refer to the exercise of powers to grant exceptions and variances (section. 358A.15), an issue not before us in this case. Had Severs asked a variance here due to the fact that insufficient space was available to place any structure back of the street line, and had it been granted, then we would have the question of the reasonableness of the board action. Anderson v. Jester, supra, 206 Iowa 452, 221 N.W. 354; Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074. Such not being the nature of this dispute, we must agree with the trial court that Certificate No. 2334 should not have been issued under the application filed therein.

VII. We find no evidence of gross negligence, bad faith or malice by the board in making its decision herein, and costs shall not be allowed against it.—Affirmed.

All JUSTICES concur except MOORE and RAWLINGS, JJ., who concur in the result, and THORNTON, J., not sitting.