Robert Trush and Margaret Trush, Appellants *v.* Township of Bensalem, Appellee.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Stanton C. Kelton, III, Wood and Floge,* for appellants.

*Leslie G. Dias,* with him *Henry F. Huhn,* for appellee.

OPINION BY JUDGE MENCER, January 22, 1981:

Robert Trush and Margaret Trush (appellants) appeal from an order of the Court of Common Pleas of Bucks County which dismissed their appeal from the decision of the Board of Supervisors of the Township of Bensalem (Township) denying their application for a subdivision of their property. We reverse and remand.

The property in question is located at the intersection of Kleckner and Albert Roads in the Township and constitutes one lot with an existing two-dwelling house. Appellants' proposal would divide the property into two separate L-shaped lots: (1) the dwelling house and its lot, which would be located entirely on Kleckner Road, and (2) an unimproved lot located partly on Kleckner Road and partly on Albert Road. For reference, a sketch of the proposed subdivision is reproduced below. The Township denied the application, the lower court affirmed, and this appeal followed.

The issue before us is whether Lot No. 2 has the required frontage mandated by Section 402(2) of the Township zoning ordinace, which provides that "[e]ach lot shall have a minmum frontage and an average width of not less than eighty (80) feet." Section 1600(25)(b) of the ordinance states, in part, that "[i]n the case of a corner lot, the yards extending along all streets are *front yards.*" (Emphasis added.) Section 1600(25)(e) also provides: "Front and Side

Yards of Corner Lots. On a corner lot, the yard facing each street which shall equal the required front yard for lots facing the street.'' The lower court construed these sections to mean that ''in a case of a corner lot the frontage requirement of §402(2) of 80 feet shall be applicable *on each street.*'' (Emphasis added.) The court then concluded that, since the frontage on Kleckner Road was less than 80 feet, the application was properly denied.

Appellants argue that the lower court erred in its conclusion that Lot No. 2 must have an 80-foot frontage on Kleckner Road. We agree. The lower court erred by equating the term ''frontage'' with ''front yard.'' These terms have separate meanings and may not be used interchangeably.

The distinction between these terms is aptly illustrated in *Jersild v. Sarcone,* 260 Iowa 288, 149 N.W.2d 179 (1967). In *Jersild,* the dispute centered around the ability of the landowner of a corner lot to choose which street he would use to determine his front yard. The court instructed that ''[w]here lots or tracts abut on a street, we have frontage, and of course as to corner lots there is a frontage on two streets.'' *Id.* at 295, 149 N.W.2d at 184. Since the ordinance did not specify which street the owner of a corner lot must use to determine his front yard, the court concluded that it was proper for the owner ''to choose *which frontage* he desired to use as his front yard.'' *Id.* at 295, 149 N.W.2d at 185 (emphasis added).

In this context, then, the term ''front yard'' is used to denote the area between the front of a structure and the edge of the property. ''Front yard,'' therefore, has little in common with ''frontage,'' which refers to the extent of land abutting on a street.

With these distinctions firmly in mind, we read Section 1600 of the ordinance as requiring that, in the

case of a corner lot, the yards extending along all streets shall be considered front yards and are subject to the requirements relating to a front yard. "Front yard" is defined in Section 402(4)(a) of the ordinance: "One yard, not less than thirty-five (35) feet in depth." Since "front yard" is not defined in terms of frontage, but rather in terms of *setback,* we must conclude that, in a corner lot all yards abutting on a street must comply only with the 35-foot setback requirement applicable to front yards. This interpretation is buttressed by a reading of the definition of "side yards" in Section 402(4)(b) of the ordinance: "Two yards, not less than thirty (30) feet in aggregate width, and neither less than twelve (12) feet; except that *in the case of a corner lot the yard abutting the street shall be not less than thirty-five (35) feet in width."* (Emphasis added.)

From the diagram, it is obvious that the proposed dwelling in Lot No. 2 complies with all the requirements of the ordinance. The lot has the minimum frontage and an average width of 80 feet, the front yard has a 35-foot depth, and the side yard abutting the street has at least a 35-foot width. The lower court's decision to the contrary must, therefore, be reversed.

The lower court failed to rule on two other points: (1) whether the dwelling on Lot No. 1 will meet the 30-foot rear yard requirement and (2) whether this proposed subdivision is subject to certain requirements regarding such matters as the necessity for showing existing sewer lines, fire hydrants, and the like. We will remand solely for determination of these matters.[1]

Order reversed and case remanded.

---

[1] In view of our decision, we need not address appellants' constitutional argument.

236

ORDER

AND Now, this 22nd day of January, 1981, the order of the Court of Common Pleas of Bucks County, dated November 28, 1979, in the above captioned matter, is hereby reversed, and the case is remanded for proceedings consistent with this opinion.