Leo **STEINLAGE** and Corrina **Steinlage** d/b/a L & C Builders, Plaintiffs–Appellants,

v.

**CITY OF NEW HAMPTON,** Iowa, a Municipal Corporation, and Donald J. Markle, Building Commissioner, Defendants–Appellees.

No. 95–1929.

Court of Appeals of Iowa.

May 29, 1997.

Richard D. Stochl of Elwood, O'Donohoe, O'Connor & Stochl, New Hampton, for appellants.

Kevin J. Kennedy of Kennedy and Kennedy, New Hampton, for appellees.

Considered by HABHAB, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Plaintiffs-appellants Leo and Corrina Steinlage applied to defendant-appellee City of New Hampton on August 21, 1995, for a building permit for the third time [1] to construct a multi-family dwelling on land they own in an area within defendant City of New Hampton zoned C–2. The permit was denied by the public works director and the building inspector.

Plaintiffs filed a petition for a writ of mandamus contending the City wrongfully denied them a building permit. Plaintiffs contend the building they seek to construct is a permitted use in the C–2 district. The City denied the permit contending the setback requirements for an R–2 zone [2] apply to the multi-family dwelling plaintiffs seek to build in a C–2 district. The City further contends that building a multi-family dwelling in a C–2 district requires a variance.

After a hearing, the district court found the setback requirements of an R–3 multi-family district apply to a C–2 zone, mandamus was not appropriate, and plaintiffs had failed to exhaust their administrative remedies.

Plaintiffs contend mandamus is a proper remedy. Because mandamus is an equitable action, our review is de novo.

*Hunziker v. State,* 519 N.W.2d 367, 369 (Iowa 1994); *Fitzgarrald v. City of Iowa City,* 492 N.W.2d 659, 663 (Iowa 1992). Plaintiffs contend a careful reading of the ordinance requires us to reach the conclusion that the use they sought was authorized by the ordinance and the City denied the permit illegally. Plaintiffs contend they were not required to exhaust their administrative remedies because there were no administrative remedies for them to exhaust. Plaintiffs contend certiorari was not available to them because their complaint was not with the Board of Adjustment but with the City's failure to follow the clear and plain language of the ordinance. The issue plaintiffs present is whether the zoning ordinance requires a variance and certain setbacks in a C–2 district.

Defendant contends plaintiffs had the right to appeal to the Board of Adjustment and that an exception was needed. Defendant further contends plaintiffs have statutory rights, and res judicata principles apply to bar reapplication for a building permit.

Mandamus is addressed under Iowa Code section 661.1 which states:

The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station.

Mandamus to compel action by a zoning board or official may be proper under some circumstances, as where issuance of a building permit has been wrongfully refused under an unreasonable, invalid, or unconstitutional zoning ordinance. *See Chicago R.I. & Pac. Ry. Co. v. Liddle,* 253 Iowa 402, 412, 112 N.W.2d 852, 858 (1962). The purpose of a mandamus is "to enforce an established right and to enforce a corresponding duty imposed by law." *Stith v. Civil Serv.*

---

1. On March 6, 1995, Corrina applied for a building permit to construct an eight-unit apartment complex on the subject property. On March 8, 1995, the City's public works director denied the application based on his conclusion a use exception from the Board of Adjustment would be necessary, the setbacks were inadequate, and the parking was not sufficient. Corrina timely appealed the decision to the Board of Adjustment.

She requested both a use exception and a variance from setback requirements. The Board rejected both requests. Plaintiffs filed an identical application for a building permit on June 22, 1995, which again was denied.

2. Or an R–3 zone.

*Comm'n,* 159 N.W.2d 806, 808 (Iowa 1968). Mandamus is not available to establish legal rights, but only to enforce legal rights that are clear and certain. *Stafford v. Valley Community Sch. Dist.,* 298 N.W.2d 307, 309 (Iowa 1980); *Reed v. Gaylord,* 216 N.W.2d 327, 332 (Iowa 1974); *Headid v. Rodman,* 179 N.W.2d 767, 770 (Iowa 1970). The question becomes whether the officers of defendant City failed to perform an act its zoning ordinance required it to perform.

 The question of what the ordinances say is a question for the courts, not the Board of Adjustment as the City urges. Zoning is an exercise of the police power delegated the municipality and must be strictly construed. *Chicago R.I. & Pac. Ry. Co.,* 253 Iowa at 412, 112 N.W.2d at 857. In reviewing an administrative agency's interpretation of a statute, this court may give some weight to the agency's determination, but "the meaning of a statute is always a matter of law, and final construction and interpretation of Iowa statutory law is for the court." *Schmitt v. Iowa Dep't of Social Serv.,* 263 N.W.2d 739, 745 (Iowa 1978); *see also West Des Moines Educ. Ass'n v. Public Employment Relations Bd.,* 266 N.W.2d 118, 124–25 (Iowa 1978).

In *Greenawalt v. Davenport Zoning Bd. of Adjustment,* 345 N.W.2d 537 (Iowa 1984), the court considered the issue of whether it should address a constitutional challenge to the ordinance first raised in district court. In that case, the court said of the Board of Adjustment, it has power only to make "special exceptions to the terms of the ordinances." Iowa Code § 414.7. The city council "provides for the manner in which such regulations and restrictions and boundaries of such districts shall be determined, estab-

lished, and enforced, and from time to time amended, supplemented, or changed." Iowa Code § 414.4. The Board, therefore, merely has authority to determine whether exceptions to an ordinance are to be allowed. It cannot amend or change an ordinance or declare an ordinance unconstitutional. Applying the rationale of *Greenawalt,* we agree with plaintiffs the courts, not the Board of Adjustment, must determine what the ordinances say.

Multi-family dwellings are allowed in an R–2 district. An R–2 district establishes minimum mandatory setbacks. It is agreed that plaintiffs' proposed building did not conform to those setbacks. Plaintiffs claim multi-family dwellings are also allowed in a C–2 district and there are no mandatory setbacks in a C–2 district.

We therefore look to the ordinances to determine whether the multi-family dwelling plaintiffs requested a permit to build is allowed under the ordinance or whether, as the City contends, it is not allowed without a special use permit.

 The zoning ordinance as to a C–2 district begins with the provision that uses in C–2 districts are those permitted in C–1 districts.[3] Uses permitted in C–1 districts include uses allowed in R–3 districts.[4] R–3 provides for any use allowed in R–2 districts.[5] Considering these provisions together would cause one to come to the conclusion that a multi-family eight-plex is allowed in a C–2 district.

The City concedes that although the rollover provisions of the ordinance may generally seem to permit a multi-family eight-plex in a C–2 zone, there is more specific language in the use exception clause that pro-

3. Section 10.01. PRINCIPAL PERMITTED USES.

> Property and buildings in a "C–2" Central Commercial District shall be used only for the following purposes:
> 10.01.01. Anything allowed in the "C–1" District is allowable in the "C–2" District.

4. Section 9.01. PRINCIPAL PERMITTED USES.

> Property and buildings in a "C–1" Commercial District shall be used only for the following purposes:

> . . . .
> 9.01.73. Any use allowed in the "R–3" District is allowable in "C–1."

5. Section 7.01. PRINCIPAL PERMITTED USES.

> Property and buildings in an "R–3" Multiple Residential District shall be used only for the following purposes:
> 7.01.01. Any use permitted in the "R–2" Mixed Residential District.

vides such use will be permitted only if the Board of Adjustment deems it appropriate. The City claims the more specific provisions should prevail over the general provisions. In making this argument, the City points to the following language in the zoning ordinance:

Section 10.02. USE EXCEPTIONS.

Any other uses deemed appropriate on review by the Board of Adjustment to be of the same general character as the foregoing permitted uses, but not including any use that may become obnoxious or offensive in a "C–2" District.

. . . .

10.02.04 Multi-family dwelling with off-street/on-site parking.

There is a contradiction between the above language and the earlier language in the ordinance with reference to permitted uses in the C–2 district. Additionally, the City's position as to interpretation of the ordinances does not conform to the language of C–3, which under Principal Permitted Uses states it is the same as C–2 districts, except as to R–3 districts.[6]

▇ In *Jersild v. Sarcone,* 260 Iowa 288, 296, 149 N.W.2d 179, 185 (1967), the Iowa supreme court said, "[T]he rule of strict construction of restrictions on the free use of property is applicable where the wording of the restriction is ambiguous." Furthermore, the restrictions of a zoning ordinance should not be extended by implication or interpretation. *Johnson v. West Des Moines Bd. of Adjustment,* 239 N.W.2d 873, 880 (Iowa 1976); *see also Chicago R.I. & Pac. Ry. Co.,* 253 Iowa at 411, 112 N.W.2d at 858.

We follow this direction in considering the ambiguous wording of the restrictions and construe the ordinance strictly. Additionally, we look to the rule stated in *Livingston v. Davis,* 243 Iowa 21, 26, 50 N.W.2d 592, 596 (1951), that says a zoning ordinance should not be extended by implication to prevent a use not clearly prohibited. Plaintiffs are correct that a multi-family dwelling is allowed in the C–2 district without a variance.

▇ That leads us to the next question of whether the setback requirements for a multi-family dwelling in an R–2 district apply to a C–2 district.

The ordinance includes a table of bulk requirements [7] which include maximum building height, minimum lot area, minimum lot width, minimum front yard, minimum side yard, minimum side/street corner lot, minimum rear yard, maximum coverage of lot, and minimum floor area. The table shows no bulk requirements for land zoned C–2 except where it adjoins any "R" district; then there is a minimum side yard of not less than ten feet.[8] In fact, there are no setbacks under C–2 at all.

The City's position is that plaintiffs under the ordinance need to meet the bulk requirements to obtain a building permit. The City contends Section 10.02.04 provides a multi-family dwelling is one of the uses for which use exception is required and Section 1.04.27 defines multi-family dwellings.

▇ Again, applying the above principles of construction, we determine the ambiguous provisions, if they exist, should be interpreted to allow the least restricted use. We therefore determine the bulk requirements of R–3 districts are not applicable to a multi-

6. Section 10.06. GENERAL DESCRIPTION "C–3."

The "C–3" Central Commercial District is designed to accommodate the needs of the interior portion of the Central Business District, allowing a wide range of services and goods permitted for consumer daily and occasional shopping service needs.
Section 10.07. PRINCIPAL PERMITTED USES.
Property and buildings in the "C–3" Central Committee District shall be used only for the same purposes as provided for in Section 10.01 for the "C–2" Central Commercial Dis-

trict, except that *"R–3" uses shall not be permitted in this District unless they are otherwise specifically allowed in a commercial district.* (Emphasis added.)

7. Section 10.03 of the zoning ordinance provides that the height, lie area, frontage, and yard requirements of a C–1 zone (referred to otherwise as bulk requirements) are specified in Section 3.19. Section 3.19 includes the table of bulk requirements as the minimum.

8. There is no claim this land adjoins an "R" district.

family dwelling in a C–2 zone under the current zoning ordinance. The City acted illegally in denying the building permit for those reasons.

The City also contends there were parking reasons the permit was denied. This issue was not before the trial court and will not be addressed in this appeal.

The writ should issue. The City of New Hampton acted illegally in denying the application for the building permit on the basis that a variance was required and there were setback requirements.

**THE WRIT SHOULD ISSUE.**