## IN THE COURT OF APPEALS OF IOWA

No. 21-0550
Filed June 29, 2022


**LAMAR COMPANY, LLC d/b/a LAMAR OUTDOOR ADVERTISING,**
    Plaintiffs-Appellants,

**vs.**

**CITY OF DES MOINES, IOWA, CITY OF DES MOINES, BUILDING AND FIRE CODE BOARD OF APPEALS and CITY OF DES MOINES ZONING BOARD OF ADJUSTMENT,**
    Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        A sign company appeals the denial of its certiorari actions challenging the city's rejection of permits for digital billboards. **REVERSED AND REMANDED WITH DIRECTIONS.**


        William M. Reasoner and Richard A. Malm of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants.

        John O. Haraldson, Des Moines, for appellees.


        Heard by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

"Sign, sign. Everywhere a sign. Blockin' out the scenery breakin' my mind. Do this, don't do that, can't you read the sign?"[1]

The Des Moines City Council may have had those lyrics in mind when it enacted a new zoning ordinance in October 2019 that outlawed digital signs on certain traffic corridors, effective December 15, 2019. Seeking the benefit of a grandfather clause, Lamar Outdoor Advertising (Lamar) applied before that effective date to convert five of its existing billboards from static to digital.[2] City officials started processing Lamar's applications but denied the permits after council members expressed concern about the digital billboard sites. Lamar appealed to the Building and Fire Code Board of Appeals (Building Board) as well as the Zoning Board of Adjustment (Zoning Board). Unsuccessful in both venues, Lamar petitioned for writ of certiorari to the district court. That court consolidated the actions and denied relief.

Lamar now alleges (1) the Building Board lacked jurisdiction to deny his appeal under the new zoning ordinance and (2) the city and its boards acted illegally in interpreting the grandfather clause. On the first point, the Zoning Board's independent finding that Lamar's application was incomplete resolves any jurisdictional question. On the second point, we agree the Zoning Board acted illegally in denying Lamar's sign permits based on the language of the grandfather

---

[1] Les Emmerson, *Signs*, recorded by Five Man Electric Band on *Good-byes and Butterflies* (Lionel Records 1970).

[2] Although the updated ordinance banned electronic signs prospectively, it included a "transition provision" grandfathering in billboards for which "a complete building permit had been accepted for processing" before December 15.

clause. Thus, we reverse and remand for the district court to enter an order sustaining Lamar's petition for writ of certiorari.

## I.        Facts and Prior Proceedings

In mid-November and early December 2019, Lamar submitted five permit applications.[3]  Lamar's application materials included a completed permit request form, leasing agreements, and details on the traditional billboards that would be converted to digital.  On December 10, company manager Jason Pomrenke emailed Neighborhood Inspection Zoning Administrator SuAnn Donovan for an update on Lamar's applications.  Two days later, Donovan responded that she used the credits that his company "had in the bank" to allow the conversion of the five proposed signs.  The email also mentioned a sixth sign.[4]  Donovan closed by saying: "I will have staff process the permits."

---

[3] The proposed digital billboards were slated for 1922 Ingersoll Avenue; 2742 East University Avenue; 4337 Park Avenue; 3519 Hubbell Avenue; and 215 University Avenue.  Through a conversion process, Lamar could earn credits by taking down traditional static billboards.  It could then apply those credits toward the construction of those digital billboards.

[4] The sixth sign was slated for install on East Fourteenth Street

The next morning, Development Zoning Inspector Hollie Burgus emailed Pomrenke, asking for more documents.

| | |
|---|---|
| **From:** | Burgus, Hollie A. |
| **To:** | jpomrenke@lamar.com |
| **Subject:** | Billboard Conversions |
| **Date:** | Friday, December 13, 2019 10:07:00 AM |
| **Attachments:** | image001.png |
| | SpecialInspectionTestingAgreementForm.pdf |

Good morning,

I am entering the billboard conversion permits into the system that you have requested and require the following documents:
1. Engineering report for each billboard
2. Special Inspection Testing Agreement Form (attached)

Thank you.

On December 18, Donovan emailed city manager Scott Sanders to let him know that Lamar had "submitted sign permits" to convert those six signs to "digital faces" using credits the company had "in the bank." Donovan explained: "The signs will have a single digital panel on each sign of 300 square feet." She also suggested: "It might be worth sharing this with council as they may have questions when the conversions begin."

Heeding Donovan's advice, Sanders did share. Four days after the effective date of the new zoning ordinance, Sanders notified the mayor and city council members that Lamar's billboard changes "have been requested and will be processed." Sanders advised them to direct questions to Donovan.

Indeed, council member Josh Mandelbaum worried about the conversions.

**Sent:** Monday, December 30, 2019 4:31 PM
**To:** Donovan, SuAnn M. <SMDonovan@dmgov.org>
**Cc:** Sanders, Scott E. <SESanders@dmgov.org>
**Subject:** FW: Digital sign conversions

I thought Ingersoll was going to be designated a Scenic Route and conversions wouldn't be allowed? Could I get an update on the way our electronic billboard ordinance works?

Are all of these able to go through by right?

Donovan replied: "Lamar had several credits banked." She explained that when Lamar "removed the static billboards they were not restricted as to where they could use them to convert a board to electronic." She confirmed that Lamar "came in a couple of weeks before the new ordinance was adopted to use the credits to convert the billboards to electronic. One was on Ingersoll."

Council member Mandelbaum asked more questions: "When (specific date) were the permits pulled? Were there any shortcomings in the permits that would prevent them from being granted?" Donovan assured Mandelbaum that she found no "shortcomings" in Lamar's applications.

**From:** Donovan, SuAnn M.
**Sent:** Monday, December 30, 2019 4:44 PM
**To:** Mandelbaum, Josh T. <JoshMandelbaum@dmgov.org>
**Cc:** Sanders, Scott E. <SESanders@dmgov.org>; Hankins, Malcolm A. <MAHankins@dmgov.org>; Johansen, Chris M. <CMJohansen@dmgov.org>
**Subject:** RE: Digital sign conversions

Councilmember,

They pulled the permits under the old code. There was no way to prevent them from the conversions.

In another email, Mandelbaum asked if the location of the billboard on Ingersoll Avenue might violate the old code and explored the option of banning billboards at that location.

**From:** Mandelbaum, Josh T.
**Sent:** Monday, December 30, 2019 4:52 PM
**To:** Donovan, SuAnn M. <SMDonovan@dmgov.org>
**Cc:** Sanders, Scott E. <SESanders@dmgov.org>; Hankins, Malcolm A. <MAHankins@dmgov.org>; Johansen, Chris M. <CMJohansen@dmgov.org>
**Subject:** RE: Digital sign conversions

The Ingersoll location appears to be right across the street from apartments, does that violate the old code?

If we can't prevent it based on the old code, could we prospectively fully ban billboards on Ingersoll only (or maybe Merle Hay as well) and amortize all of the billboards on Ingersoll/Merle Hay?

Josh

In her reply, Donovan outlined the chronology for the city's processing of Lamar's applications. She noted that her review was "completed and the permits were entered into the system" two days before the effective date of the code changes. So in her view, Lamar's applications for the digital billboards satisfied the grandfather clause included in the new ordinance.

From: "Donovan, SuAnn M." <SMDonovan@dmgov.org>
Date: January 2, 2020 at 9:04:23 AM CST
To: "Mandelbaum, Josh T." <JoshMandelbaum@dmgov.org>
Cc: "Sanders, Scott E." <SESanders@dmgov.org>, "Hankins, Malcolm A."
<MAHankins@dmgov.org>, "Johansen, Chris M." <CMJohansen@dmgov.org>
Subject: RE: Digital sign conversions

Councilmember Mandelbaum,

We started the review around November 22, 2019. The review was completed and the permits were entered into the system December 13, 2019. I believe we are waiting for engineering reports to issue the permits.

If there were any short comings in the application we would not have issued them. Knowing these are controversial I took extra time and did a very comprehensive review.

Since they were issued under the old code there was nothing to prevent the use of the conversion credits.

After receiving that news, Mandelbaum looped in another council member, Bill Gray. In early January 2020, Gray emailed Mandelbaum: "Disappointing. I wish they had got me or you involved before this. I am still up for a fight."

Eleven days later, Donovan sent Lamar a letter that contradicted her position expressed in the email exchange with Mandelbaum. She told Pomrenke that under the municipal code his "application submittals were not complete" without "the required engineers report and a special testing agreement form." And, without a completed permit application, Lamar could not benefit from the grandfather clause, according to the denial letter.

Believing that Donovan misinterpreted the grandfather clause, Lamar appealed to the Zoning Board of Adjustment. But Donovan informed Lamar that it

should instead appeal to the city's Building and Fire Code Board of Appeals. To be safe, Lamar contested the denial before both boards.

The Building Board took the first bite at the apple. During its proceedings, Lamar argued that, under the building code, its permit application was complete before submission of an engineer's report. To support its position, Lamar detailed prior experiences when the city granted building permits despite months-long delays between submission of the application and the engineering report.[5] As for these digital billboard applications, Lamar pointed to Donovan's December 12 email—in which she confirmed that she would have "staff process the permits"— as proof that the applications were complete. Lamar also argued that the emails between Donovan and the council members showed that the elected officials pressured Donovan to craft a pretext for denial. But the Building Board was not swayed by these arguments. In a March 2020 decision, it determined that "a complete permit submittal had not been provided at a time before the zoning code changed."

Four months later, in July, the Zoning Board held its hearing. Lamar reprised several of its arguments to this board. Plus, Lamar contended that the Building Board improperly interpreted the grandfather clause, exceeding its jurisdiction. But the Zoning Board too rejected Lamar's appeal, noting that it had no jurisdiction to review a decision of the Building Board. In the alternative, for

---

[5] Lamar grounded its claim in a code section that allows permit applications to "expire" if no permit is issued within 180 days. *See* Des Moines City Code § 26-138(h)(4).

each sign, the Zoning Board found Lamar's permit application was incomplete "since it was lacking the required engineer's report and special testing agreement."

By August 2020, Lamar had filed two petitions for writ of certiorari in the district court. On Lamar's uncontested motion, the court consolidated the two actions. In a March 2021 ruling, the district court denied the writs and sustained the decisions of both boards. Lamar appeals.

## II.    Scope and Standards of Review

Iowa Rule of Civil Procedure 1.1412 governs our review. That rule provides that "[a]n appeal from an order or judgment of the district court in a certiorari proceeding is governed by the rules of appellate procedure applicable to appeals in ordinary civil actions." Iowa R. Civ. P. 1.1412. In other words, we review on assigned errors only. *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996). Where evidence is in dispute, we are bound by the district court's fact findings, if supported by substantial evidence. *See Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993). But we are not bound by erroneous legal rulings that materially affect the court's decision. *Id.* And when the facts are undisputed, the construction of the ordinance is a question of law. *Jersild v. Sarcone*, 149 N.W.2d 179, 184 (Iowa 1967).

## III.    Analysis

## A.  Jurisdiction

To begin, we address Lamar's argument that the Building Board and Zoning Board ignored jurisdictional limitations.[6] Lamar contends that, by deciding Lamar's

---

[6] The Building Board is a creature of chapter 26 of the Des Moines City Code and may interpret that chapter and hear appeals from decisions of building officials. By

application was incomplete, the Building Board ventured outside its lane by expressing an "interpretation and application" of the zoning code's grandfather clause. On the other hand, Lamar asserts that the Zoning Board wrongfully conceded its jurisdiction by deferring to the Building Board's determination on that same provision.

Upon review of the record, we find no jurisdictional defect. True, the Building Board determined that Lamar's applications were incomplete as of the effective date of the new ordinance. Also true, the Zoning Board determined it had no jurisdiction to overturn that decision. But critically, the Zoning Board *also* issued its own determination under the grandfather clause. The Zoning Board made the independent finding that Lamar

> ha[d] not provided any evidence that demonstrates that a complete application was submitted prior to the retirement of the previous zoning regulations . . . . The application was deemed incomplete since it was lacking the required engineer's report and special testing agreement . . . . Since the application was not complete, the sign permit was denied.

This alternative finding by the Zoning Board that Lamar did not qualify under the transitional provision resolves any jurisdictional complaint.[7]

## B. Interpretation of Grandfather Clause

Jurisdiction settled, we turn to the Zoning Board's legal determination. The purpose of a certiorari petition is "to test the legality of the action taken by an inferior tribunal." *Bush v. Bd. of Trs. of Mun. Fire & Police Ret. Sys. of Iowa*, 522

---

contrast, chapter 134 of the city code governs the Zoning Board, and its scope is limited to zoning disputes under that chapter.

[7] Indeed, during oral argument, Lamar's attorney agreed that the Zoning Board's alternative finding largely disposed of its jurisdictional argument.

N.W.2d 864, 866 (Iowa Ct. App. 1994). The petitioner can show an illegality if that tribunal has not followed a statute or substantial evidence does not support its findings. *Id.* In Lamar's view, the Zoning Board acted illegally because it misinterpreted the transitional provision of the new city ordinance. That "grandfather clause" allows applicants to proceed under the old ordinance if their "complete building permit application" was "accepted for processing" before December 15, 2019.[8] Lamar contends its applications were "accepted for processing" by December 12, pointing to the emails from zoning administrator Donovan and city manager Sanders.

But in denying Lamar's petition, the district court did not rest its determination on the "accepted for processing" phrase. The court instead focused on what was required for a "complete" permit application under the grandfather clause. In addressing that question, the court rejected the city's argument that, from the moment they were filed, Lamar's applications were incomplete without the engineering reports and a special inspection testing agreement under Des Moines City Code section 26-803.[9] Because that building code provision included

---

[8] The city ordinance says:

> Any building, development or structure for which a building permit was issued or *a complete building permit application had been accepted for processing before the effective date specified in section 134-1.3 of this article* may be completed in conformance with the issued building permit and other applicable permits and conditions, even if such building, development or structure does not comply with provisions of this zoning ordinance.

Des Moines City Code § 134-1.11.1 (emphasis added).

[9] That provision states:

> Sign and billboard permit application; plans and specifications.
>
> (a) Application for a sign permit shall be made in writing upon forms furnished by the zoning enforcement officer. Such application

"when required" language, the court decided the applications could be "complete" without submission of those added documents.

That said, the court then pivoted to find Lamar's applications were no longer complete after zoning inspector Burgus requested the engineering reports and testing agreement. The court held that as of December 13 those documents were required for a complete application under chapter 26. Based on that interpretation, the court accepted the determinations of the Building Board and Zoning Board that "Lamar did not submit a complete permit application as of December 15, 2019."

We disagree with the district court's analysis. When reading ordinances, we apply the general rules of statutory interpretation. *City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 313–14 (Iowa 2006). Thus, we start with ordinance language, looking for "a plain and clear meaning within the context of the circumstances presented by the dispute." *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). If, after consulting the text, the ordinance is ambiguous, we apply rules of construction. *Id.* at 118. Ambiguity exists when reasonable minds could differ on the meaning. *Id.*

---

shall contain the street address or legal description, as required, of the property upon which the sign is to be located, the name and address of the owner and the sign erector, and *such other information as may be required by the zoning enforcement officer.*
    (b) Two copies of plans and specifications shall be submitted when required with the application for each sign permit. Such plans shall show complete details, methods of attachment or support, location, and materials to be used. Computations, stress diagrams, and other data sufficient to show the correctness of the plans shall be submitted *when required* by the community development department.

Des Moines City Code § 26-803 (emphasis added.).

These principles in mind, we turn to the text of section 134-1.11.1(A), the grandfather clause. Both the city and the district court isolated the term "complete" when deciding that Lamar's applications were not saved by the grandfather clause. But to decipher the meaning of the language, we must consider the full context of the clause. *See In re Est. of Glaser*, 959 N.W.2d 379, 386 (Iowa 2021). In context, an application is considered complete if it has been "accepted for processing." And if the city accepted the application for processing before December 15, then the project may proceed under the prior zoning regulations. Read as a whole, no ambiguity appears in the grandfather clause.

What's more, the intended meaning of completeness and acceptance for processing in section 134.1.11.1(A) is even clearer when read along with section 134.6.1.4(D). Under that section, the city will consider an application "complete and ready for processing" if it is submitted "in the required number and form, is accompanied by all required information, . . . and is accompanied by the required application filing and notification fees." Des Moines City Code § 134.6.1.4(D)(1). "If an application is determined to be incomplete, the official responsible for accepting the application must provide notice to the applicant along with an explanation of the application's deficiencies." *Id.* § 134.6.1.4(D)(2). "No further processing of incomplete applications will occur and incomplete applications will be pulled from the processing cycle." *Id.* § 134.6.1.4(D)(3). On the other hand, "[a]pplications deemed complete will be considered to be in the processing cycle and will be reviewed by staff and other review and decision-making bodies in accordance with applicable review and approval procedures of this zoning ordinance." *Id.* § 134.6.1.4(D)(4).

Viewing the grandfather clause in tandem with section 134.6.1.4(D), we find a lack of substantial evidence to show that Lamar's applications were not "accepted for processing" before the deadline. In fact, just the opposite occurred. Donovan, the zoning official responsible for accepting the application, told Lamar three days before the effective date of the new ordinance that she would "have staff process the permits." In ruling on Lamar's motion to reconsider, the district court decided that Donovan's statement was different from saying that the permits had been "accepted for processing." We disagree. Every indication was that Donovan would have the applications reviewed by staff. That message was reinforced by Donovan's confirmation that she has used Lamar's banked conversion credits to facilitate the installation of the proposed digital signs.[10]

And nothing about Burgus's email on Friday, December 13, asking Lamar for an engineering report and a special inspection testing agreement, changes the fact that the city had already accepted the applications for processing. Burgus was not the person responsible for accepting or rejecting the applications. And even if she had been, she did not inform Lamar that the applications were incomplete, as alleged in the city's appellee's brief. Burgus's email did not use the word "incomplete." In fact, even as Burgus requested additional documents, she told Pomrenke that she was "entering the billboard conversion permits into the system."

---

[10] In its appellee's brief, the city contends that Lamar misconstrues Donovan's statements about conversion credits as a guarantee that their digital billboard permits were approved. But the grandfather clause applied if the building permits were issued *or* if a complete application had been "accepted for processing"—a step short of approval. Thus, the city's reference to approval, rather than processing, is off the mark.

Likewise, it was obvious that Donovan did not believe that Lamar's applications had been "pulled from the processing cycle." Rather, she contacted the city manager three days after the effective date of the new ordinance to let him know that Lamar had submitted the applications. She even described the size of the digital panels that the new signs would feature. And expecting that the city council might have questions about the sign conversions, Donovan urged Sanders to give them a heads up. When Sanders did so, he was equally definitive about the city's acceptance of the applications, telling the mayor and city council that Lamar's billboard conversions "have been requested and will be processed."

That certainty that the digital signs would be grandfathered in persisted when Donovan first received pushback from council member Mandelbaum. In emails that the district court described as "bordering on" an attempt to apply improper pressure on Donovan, or at least having "the appearance of impropriety," Mandelbaum asked Donovan if there were any "shortcomings" in Lamar's applications that would allow the city to reject them. Donovan assured him that she had done "a very comprehensive review" because she knew the digital signs would be "controversial" and found no shortcomings that would prevent the application of the "old code" to Lamar's applications. A second city council member, Bill Gray, called the situation "disappointing," and expressed his willingness to intervene in the matter.

Our record does not show what communication, if any, occurred between city council members and Donovan after January 2. But on January 13, she changed her tune and notified Pomrenke that the applications were denied. For the first time, she informed Lamar that the applications "were  not complete"

without the engineering report and special testing agreement form. Pointing to Donovan's about-face, Lamar contends the city's decision was made "arbitrarily" under "political pressure." *See City of Iowa City v. Hegen Elecs., Inc.*, 545 N.W.2d 530, 535 (Iowa 1996) ("Zoning decisions 'must not be arbitrary and capricious so as to amount to an abuse of governmental power.'" (citation omitted)).

We agree with Lamar. An arbitrary decision is not governed by fixed rules or standards, but springs from the decider's will or discretion. *See Churchill Truck Lines, Inc. v. Transp. Regul. Bd. of Iowa Dep't of Transp.*, 274 N.W.2d 295, 299 (Iowa 1979) (citing *Paul v. Bd. of Zoning Appeals of City of New Haven*, 110 A.2d 619, 621 (Conn. 1955)). The city's denial of Lamar's sign permits, affirmed by the Zoning Board, appears to reflect the will of the council members rather than city officials' own previous interpretation of the grandfather clause as applying to the applications. The arbitrary denial of Lamar's application was counter to the language of the grandfather clause. Applying sections 134.1.11.1(A) and 134.6.1.4(D) to these facts, we cannot find substantial evidence to support the Zoning Board's decision. Thus, we reverse the district court's ruling and remand with directions to enter an order sustaining Lamar's petition for writ of certiorari.

**REVERSED AND REMANDED WITH DIRECTIONS.**